UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW J. PHILLIPS-ADDIS,

Plaintiff,

v.

UNKNOWN WARD, et al.,

Defendants.

Case No. 1:20-cv-699

Honorable Hala Y. Jarbou

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint as frivolous with regard to Defendant Ward and for failure to state a claim with regard to the other Defendants.

## **Discussion**

### **I. Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues ECF Sergeant Unknown Ward and a number of persons involved in his criminal prosecution in the Delta County Circuit Court: Judge John Economopoulos, Magistrate Judge Steven C. Parks, Delta County Court Clerk Brenda J. LaCount, Delta County Chief Prosecutor Philip L. Strom, and Delta County Assistant Prosecutor Lauren M. Wickman.

Because this action relates directly to Plaintiff's criminal prosecution, the Court's prior resolution of Plaintiff's first habeas corpus petition provides valuable background. Plaintiff filed his initial habeas petition on October 24, 2019. *Phillips-Addis v. Parish*, No. 1:19-cv-905 (W.D. Mich.) (herein *Phillips-Addis Habeas I*). The Court described the facts relating to that petition as follows:

> Petitioner pleaded guilty in the Delta County Circuit Court to assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84. On November 6, 2017, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to a prison term of 8 to 20 years.
>
> * * *
>
> On July 27, 2017, Petitioner was housed in the Delta County Jail. The victim, Nathan Gartland, was housed there as well. Gartland was laying on his back on seats by a table. Petitioner walked over to him with a towel, placed the towel around Gartland's neck, pulled Gartland to the ground, and dragged Gartland by the towel to the door. The incident was captured on camera. Petitioner acknowledged at his plea hearing that he "wrapped a towel around Nathan Gartland's neck, tried to kill him." (*Id*., PageID.82.)
>
> Petitioner entered a *nolo contendere* plea to the charge. But, after he entered his plea and before he was sentenced, he claimed that he and Gartland staged the entire assault. Petitioner staged the assault to avoid extradition to Wisconsin. The staged assault "was to force the state of Michigan justice system [to] stop [Petitioner from] going back to Wisconsin state prison system." (Am. Pet., ECF No. 3, PageID.35.) The entire "crime" was "actually [a] fraud on Michigan state and Wisconsin States justice system." (*Id*.) The goal was to "force[] Delta County [to] make him . . . stay in the state of Michigan." (*Id*.)
>
> After Petitioner's plea, however, he disclosed the plot to the court and prosecutor by way of a letter. Petitioner's disclosures in the letter forced the court, the prosecutor, and Petitioner's counsel, to reconsider further proceedings in the case.

The prosecutor "gave [Petitioner] a chance to withdraw the false case and . . . drop [the] false charges, but then [Petitioner would . . . lose his discharge from [the] Wisconsin case . . . ." (*Id.*, PageID.39.) Petitioner could not abide that result because his "life was at risk in Wisconsin state [prison] system, due [to] gang [problems.]" (*Id.*)

Petitioner's counsel knew that Petitioner was hoping to get at least a five-year sentence in Michigan because Petitioner felt that with a sentence that long, Wisconsin would drop its hold on him. (*Id.*, PageID.57, 67.) After Petitioner disclosed the fraud, he informed his counsel that he wanted to go forward with sentencing anyway. (*Id.*, PageID.65-66.) In Petitioner's letter(s) to the court and prosecutor, he disclosed additional crimes, in addition to the fraud he had perpetrated on the court. (*Id.*, PageID.68-70.) Counsel advised Petitioner that, should Petitioner withdraw his plea in the pending case, he might face a potential life sentence because of his criminal history; and, in addition, he might face prosecution for perjury. (*Id.*)

Counsel offered to withdraw . . . Counsel acknowledged that he had seen the video recording of the assault; but, he did not review it after Petitioner disclosed the concoction or interview Gartland to confirm Petitioner's story. (*Id.*, PageID.72-76.) Because counsel believed Petitioner wanted to go forward with sentencing—and Petitioner's representations in his habeas submissions support that belief—Petitioner went forward with the sentencing. But, "after sentencing was done and Wisconsin started [their] end of letting [Petitioner be] discharged . . . [, Petitioner] wanted to back out [of] the state of Michigan deals . . . ." (*Id.*) Indeed, he hoped to "gain money out [of] the dealings of the fraud." (*Id.*) He secured the appointment of appellate counsel.

Appellate counsel moved to withdraw Petitioner's plea. The trial court held a hearing, and rejected Petitioner's claim. The court ruled that the plea proceeding itself was error free. (*Id.*, PageID.93.) Counsel had done nothing wrong up to and including the plea proceeding. (*Id.*) The trial court found further "that [Petitioner's counsel's] performance was at or above an objective standard of reasonableness under prevailing professional norms and there [was] no reasonable probability that an error was committed for the Court to conclude that the results of the proceedings would have been different." (*Id.*, PageID.94.) Petitioner, with the assistance of appellate counsel, filed an application for leave to appeal, raising the first two of the issues identified above. By order entered September 25, 2018, the court of appeals denied leave "for lack of merit. . . ." *People v. Phillips-Addis*, No. 345803 (Mich. Ct. App. Sept. 25, 2018), http://publicdocs.courts.mi.gov/coa/public/orders/2018/345083(8)_order.pdf.

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered March 5, 2019, concluding that the questions presented should not be reviewed. *People v. Phillips-Addis*, No. 158693 (Mich. Mar. 5, 2019, http://publicdocs.courts.mi.gov/sct/public/orders/158693_14_01.pdf.

> Petitioner was angling to get a Michigan sentence to avoid imprisonment in Wisconsin because he had gang-related problems in the Wisconsin prison system. Now, Petitioner has run into similar problems in the Michigan prison system. (Am. Pet., ECF No. 3, PageID.55-56, 125.) Because he is "innocent," he wants out of prison. Petitioner "wants [to] pull out of his contract of such a plot." (Am. Pet., ECF No. 3, PageID.39.)

*Phillips-Addis Habeas I* (Op., ECF No. 7, PageID.188-190.)[1]

After the Michigan Supreme Court denied Plaintiff's application for leave to appeal, but before Petitioner filed his habeas petition, he attempted to mount a collateral attack on his sentence based on allegedly false information in his pre-sentence investigation report. According to Plaintiff, the Delta County Circuit Court suggested Plaintiff resolve the issue through the MDOC, the entity that prepares the reports. The MDOC apparently suggested that Plaintiff should address the issue through the Delta County Circuit Court.

It appears that Plaintiff attempted to file materials in the state court. Plaintiff attaches to his complaint a letter from Defendant LaCount rejecting as incomprehensible Plaintiff's "letters and accompanying materials of September 5 and September 10, 2019." (ECF No. 1-4, PageID.49.) Plaintiff also attaches to his complaint documents that approximately correspond to those dates. (ECF No. 1-3, PageID.45-46.) Those documents raise "sovereign citizen" arguments[2] and announce Plaintiff's filing of UCC Financing Statement against the Defendants.

Plaintiff also sent those documents to Defendants Wickman and Strom. Defendant Wickman was, apparently, not amused. She, through Captain Hunter of the Escanaba Public Safety Department, contacted ECF and asked that Plaintiff not contact her by mail, phone, and/or

---

[1] The Court determined that Plaintiff's initial habeas petition lacked merit and, on January 14, 2020, dismissed it on preliminary review.

[2] The Sixth Circuit Court of Appeals has described the "sovereign citizen" movement as "a highly disperse, antigovernment movement" that claims to "retain an individual common law identity exempting them from the authority of . . . fraudulent government institutions." *United States v. Gooch*, 595 F. App'x 524, 527 n.1 (6th Cir. 2014). That court has also described "sovereign citizen" arguments as "meritless rhetoric." *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017).

third party. ECF issued a notice of intent to conduct an administrative hearing regarding the matter. (ECF No. 1-1.) In lieu of the hearing, Plaintiff agreed to not contact Defendant Wickman under penalty of discipline under the MDOC policy directives. (*Id.*)

Plaintiff also attaches to his complaint a document entitled motion to correct presentence report (ECF No. 1-2). The purpose and intent of that document is understandable, but it is not a motion for relief from judgment, which is the appropriate vehicle to present a collateral attack on Plaintiff's judgment of sentence after completion of his direct appeal. *See* Mich. Ct. R. 6.500 *et seq*. Moreover, it is not clear that Plaintiff ever filed or even attempted to file that document in the state court. Indeed, the timing of that document suggests that it may not have ever reached the court even if Plaintiff intended to send it. *See* (MDOC Corr., ECF No. 1-4, PageID.50.)

In December, Plaintiff continued to pursue his "sovereign citizen" approach to addressing the problem. He attempted to enforce his UCC liens in this Court. (ECF No. 1-3.) This Court found Plaintiff's submission no more comprehensible than the state court did. This Court also rejected the pleadings. Plaintiff served the documents he attempted to file in this Court on the Defendants. It appears he may also have attempted to file them in the state courts. By letter dated January 16, 2020, Defendant LaCount rejected them as incomprehensible. (ECF No. 1-4, PageID.48.)

Plaintiff alleges that the state court has told him he can only file a motion through his attorney and that the state court has blocked all of his pro se materials. He claims that the documents that he attaches to his complaint support that allegation. The documents, however, do not support the allegation. The documents show that the state court has rejected Plaintiff's

submissions as incomprehensible under exactly the same circumstances that this Court has rejected them as incomprehensible.

Plaintiff appears to have concluded from his "no contact" agreement regarding Defendant Wickman and the circuit court's rejection of Plaintiff's "sovereign citizen" filings, that the circuit court has forbidden contact from Plaintiff. There is nothing in the documents that suggests that is the case. It may be true, however, that Plaintiff's attempts to serve his state court filings (or attempted filings) on Defendant Wickman ran afoul of Plaintiff's agreement regarding "no contact" with her.

Although Plaintiff alleges that the Delta County Circuit Court has ordered "no contact" from Plaintiff, the Court is disinclined to accept that allegation as true for two reasons: first, the documents Plaintiff submits to support that proposition simply do not support the proposition; and second, Plaintiff has demonstrated an inability to reasonably interpret the orders issued by the state court and this Court.

When this Court rejected Plaintiff's "sovereign citizen" submissions the Court stated:

> The court is unclear as to what Mr. Phillips-Addis is attempting to file. If he is attempting to file a Registration of Judgment, he should file clearly captioned documents, a copy of the judgment he wishes to enforce clearly marked as a judgment and including the other court's name and case number, and the correct filing fee of $47.00.

*Phillips-Addis v. Bottrell et al.*, No. 1:20-cv-620 (W.D. Mich.) (Order Rejecting Pleading, ECF No. 1-2, PageID.30.) On the strength of that clear language, every civil rights claim Plaintiff has filed since has been entitled a Registration of Judgment and accompanied by a check for $47.00 with an explanation that this Court has instructed Plaintiff to so proceed. Plaintiff's complete disregard for the requirement that a judgment from another court exist is inexplicable. Plaintiff is simply not a reliable interpreter of court orders. Although the Court has significant doubts that the

facts as alleged by Plaintiff are true, for purposes of the analysis herein, the Court accepts them as true.

Defendant Ward is included in the complaint because, on July 5, 2020, Ward was responsible for placing Plaintiff in segregation, purportedly because Plaintiff violated the "no contact" order. Plaintiff is particularly cagey in his description of Ward's conduct. Plaintiff states that "Sgt. Ward place me into segeragation for violation of contacting Delta County Court's address 310 Ludington St Escanaba MI 49829." (Compl., ECF No. 1, PageID.12 (verbatim).) Plaintiff's careful choice of words suggests that Ward was enforcing a "no contact" with the Delta County Circuit Court order; but that is not the case. As Plaintiff makes clear in *Phillips-Addis v. Bottrell et al.*, No. 1:20-cv-620 (W.D. Mich.), Ward was enforcing the "no contact" with Defendant Wickman agreement—her work address happens to be the same as the court's address.

Behind all of Plaintiff's attempts to connect with the state court is his claim that there are errors in the pre-sentence investigation report that impacted his sentence.[3] The most detailed explanation of those errors appears in Plaintiff's Motion to Correct Presentence Investigation Report (ECF No. 1-2, PageID.25-33). Review of Plaintiff's list of "errors" reveals that it depends entirely on the claims the Court rejected when it denied Plaintiff's first habeas petition. *Phillips-Addis v. Parish*, No. 1:19-cv-905 (W.D. Mich. Jan. 14, 2020).

Moreover, Plaintiff's pre-sentence investigation report claims are only of significance to the extent they impacted Plaintiff's sentence. Plaintiff reports that he had a sentence agreement. (ECF No. 1-2, PageID.25.) Indeed, getting a sentence of a particular length—long

[3] Plaintiff raised his specific challenges to the pre-sentence investigation report errors in the third habeas petition he filed in this Court. *Phillips-Addis v. Parish*, No. 1:20-cv-631 (W.D. Mich.). He raised them again in his fourth habeas petition. *Phillips-Addis v. Parish*, No. 1:20-cv-661 (W.D. Mich.). Both of those petitions were transferred to the Sixth Circuit Court of Appeals as second or successive.

enough to convince Wisconsin to simply let Plaintiff serve out his sentence in Michigan—was the very purpose of Plaintiff's concoction of the crime in the first instance.

It is well established that a court violates due process when it imposes a sentence based upon materially false information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). To prevail on such a claim, the prisoner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447. But, Plaintiff cannot show the court relied on false information in imposing sentence where the sentence is the product of agreement rather than simply scoring of the sentencing guidelines variables. Where a defendant agrees to a particular sentence, the sentence is no longer a product of the guidelines. It is a product of the agreement. The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'" *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("*Lockridge* does not apply to defendant's sentences because defendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F3d 353, 364 (7th Cir. 2005) (concluding that a the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines) (*cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App. Oct. 13, 2015) (P.J. Boonstra concurring) ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App. July 21, 2016); *People v. Faher*, No. 328285, 2016 WL 6127902. at *4 (Mich. Ct. App. Oct. 18, 2016) ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant,

the sentence is not affected by the court's perception of the . . . sentencing guidelines . . . ."). Thus, even if Plaintiff could show the pre-sentence investigation report included errors, he could not demonstrate that those errors were of constitutional significance.

Plaintiff contends that these Defendants have denied him access to the courts in violation of the First Amendment. Plaintiff asks this Court to enter an order compelling the Delta County Circuit Court to correct the pre-sentence investigation report, compelling the Delta County Circuit Court and the MDOC to refer to Plaintiff as Andrew Jeffrey Phillips-Donovan not Phillips-Addis; removing Defendant Wickman as Assistant Prosecutor and replacing her with a prosecutor from the next jurisdiction, compelling ECF to return the legal documents taken from Plaintiff, compelling ECF to permit Plaintiff to mail documents to the Delta County Circuit Court and Prosecutor, compelling ECF to release Plaintiff from segregation, give him access to computers and legal items, and provide legal copies.

**II. Duplicative claims**

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953-54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and protect

parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

In addition, courts have held that an *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be dismissed under 28 U.S.C. § 1915(e)(2)(i) as frivolous or malicious. *See, e.g. McWilliams v. State of Colo.*, 121 F.3d 573, 574 (10th Cir. 1997) (holding that repetitious litigation of virtually identical causes of action may be dismissed under the *in forma pauperis* statute as frivolous or malicious); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that an action may be dismissed as frivolous under 28 U.S.C. § 1915 when the complaint "merely repeats pending or previously litigated claims); *Pittman v. Moore*, 980 F.2d 994, 994-95 (5th Cir. 1993) (finding that it is "malicious" for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (holding that it was appropriate to dismiss an *in forma pauperis* civil rights suit by prison inmate where suit was duplicative of facts and allegations made in previously dismissed suit, and merely named a different defendant whose actions formed a partial basis for the previous suit); *Risley v. Hawk*, 918 F. Supp. 18, 22 (D.D.C. 1996) (holding that the district court may dismiss an *in forma pauperis* action where the complaint duplicates the allegations of other pending or previously filed litigation, even where the previously filed actions were filed in different districts); *Hahn v. Tarnow*, No. 06-cv-12814, 2006 WL 2160934, at *3 (E.D. Mich. July 31, 2006).[1]

A complaint is duplicative and subject to dismissal if the claims, parties and available relief do not significantly differ from an earlier-filed action. *See Serlin v. Arthur*

[1] Prior to April 26, 1996, the provisions in § 1915(e)(2) were set forth at 28 U.S.C. § 1915(d). Thus, *Cato*, *Pittman* and *Bailey* were decided under § 1915(d).

*Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Although complaints may not "significantly differ," they need not be identical. Courts focus on the substance of the complaint. *See, e.g. Bailey*, 846 F.2d at 1021 (holding that a complaint was duplicative although different defendants were named because it "repeat[ed] the same factual allegations" asserted in the earlier case).

Considering the substantial similarities between the parties, legal claims, factual allegations, temporal circumstances and relief sought in the present complaint and the complaint in *Phillips-Addis v. Bottrell et al.*, No. 1:20-cv-620 (W.D. Mich.), the Court concludes that the present complaint is duplicative with regard to all claims raised against Defendant Ward. Therefore, pursuant to the Court's inherent power and 28 U.S.C. § 1915(e)(2)(i), Plaintiff's complaint against Defendant Ward will be dismissed on the grounds that it is wholly duplicative and, therefore, frivolous.

**III. Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants have interfered with his access to the courts in violation of Plaintiff's First Amendment rights. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's

access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). Here, Plaintiff raises his claims against persons who participated in his conviction rather than prison officials.

Plaintiff fails to explain how the actions of the prosecutors Strom or Wickman have interfered with Plaintiff's access to the court. He fails to allege that Strom took any action at all. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Strom.

Plaintiff alleges that Defendant Wickman took an action: she requested that Plaintiff not be permitted to contact her by mail, phone, or through third parties. But Plaintiff

fails to allege how that request has interfered with Plaintiff's access to the court. He suggests that ECF may have taken that request one step further and barred Plaintiff from sending documents to the courthouse; but that does not implicate Defendant Wickman. Setting aside the fact that the allegation is not particularly credible, that is certainly not what Wickman requested. Therefore, Plaintiff has failed to allege conduct by Wickman that has interfered with his access to the court.

Plaintiff likewise fails to allege that Magistrate Judge Parks or Judge Economopoulos have interfered with Plaintiff's access to the courts. Plaintiff does not allege that either Defendant has played any role in the rejection of Plaintiff's pleadings. Those parties may have a supervisory relationship with Defendant LaCount, who actually rejected the pleadings, but that is not sufficient to create liability under § 1983. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Parks or Economopoulos engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff's claims against Defendants Parks and Economopoulos are also properly dismissed because the injunctive relief Plaintiff requests is simply not available under § 1983. The

statute provides: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 18 U.S.C. § 1983.  The Sixth Circuit Court of Appeals considered a claim similar to Plaintiff's in *Coleman v. Governor of Michigan*, 413 F. App'x 866 (6th Cir. 2011).  In *Coleman*, the plaintiffs challenged the state circuit and appellate court judges' rejections of their pleadings because the plaintiffs had failed to pay some or all of the filing fees.  The *Coleman* court rejected the imposition of liability against state court judges under § 1983:

> Judges generally are absolutely immune from civil suits for money damages under § 1983. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *see also Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). Furthermore, "[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer." *Gilbert v. Ferry*, 298 F. Supp. 2d 606, 611 (E.D. Mich. 2003); *see* Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983).

*Coleman*, 413 F. App'x at 873.  Plaintiff does not allege that Defendants Parks or Economopoulos violated a declaratory decree or that declaratory relief was not available; therefore, Plaintiff may not obtain injunctive relief against those judicial officers under the statute.

The immunity from money damage claims and the prohibition against injunctions extends to quasi-judicial officers, such as Defendant LaCount.  The *Coleman* court stated further:

> Absolute judicial immunity applies not only to judges, but has extended, in the form of quasi-judicial immunity, to any person acting as an arm of the absolutely immune judicial officer. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994) (holding that where employee's involvement "necessarily arose in the execution of the [judicial] order," absolute quasi-immunity applies). . . . [Q]uasi-judicial immunity prevents injunctive or monetary relief from these Defendants [clerks and administrators] as well.

*Coleman*, 413 F. App'x at 873-74. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (one who acts as a judge's designee in carrying out a function for which the judge is immune is also protected from suit seeking monetary damages); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court was entitled to quasi-judicial immunity for issuing a warrant as directed by the court); *accord Carlton v. Baird*, No. 03-1294, 2003 WL 21920023, at *1 (6th Cir. Aug. 8, 2003) (state court clerk's office employees were entitled to quasi-judicial immunity from state prison inmate's § 1983 claim); *Lyle v. Jackson*, No. 02-1323, 2002 WL 31085181, at *1 (6th Cir. Sept. 17, 2002) (quasi-judicial immunity applied to claims against state court clerks who allegedly failed to provide prisoner with requested copies of previous filings and transcripts); *Bradley v. United States*, 84 F. App'x 492 (6th Cir. 2003) (federal court clerk). *Cf. Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 437 & n.11 (1993) (court reporter not entitled to absolute immunity for preparing transcripts because that function is ministerial; it does not exercise the kind of judgment protected by judicial immunity). Defendant LaCount was clearly acting on behalf of the court when she returned Plaintiff's documents as incomprehensible. Accordingly, Plaintiff may not obtain injunctive relief against her.

Even if Defendants Parks, Economopolous, and LaCount were not protected by judicial immunity and the statutory prohibition against enjoining judicial officers, Plaintiff has not stated a claim against them for interference with his access to the courts. An indigent prisoner's constitutional right to legal resources and materials is not without limit. In order to state a viable

claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

As noted above and for all the reasons set forth in the Court's opinion rejecting Petitioner's first habeas petition, the "sovereign citizen" claims Plaintiff was prevented from filing

are inherently frivolous, and any claim regarding the impact of pre-sentence investigation report errors on Plaintiff's sentence lacks merit. Therefore, Plaintiff does not necessarily have a right to access the courts to present those claims. Moreover, even if he did, he has not lost any remedy by virtue of the Defendants' actions. He may still present the claims by way of a procedurally proper motion written in a comprehensible manner. There is no statute of limitation on motions for relief from judgment under Michigan Court Rule 6.502. Therefore, Plaintiff has failed to allege "actual injury."

For all of these reasons, Plaintiff has failed to state a claim against these Defendants and his complaint is properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 3, 2020

/s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE